**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRIANNA ELMER, on behalf of herself and all others similarly situated,<br><br>                Plaintiffs,<br><br>     v.<br><br>AMOL R. KOHLI; AARK HOSPITALITY; AARK ENTERPRISES; AARK ENTERPRISES, INC.; AARK RESTAURANT GROUP, LLC; AARK ENTERPRISES NJ, INC.; AARK ENTERPRISES PA, INC.; AARK HOSPITALITY BENSALEM FR, INC.; AARK HOSPITALITY CHADDS FORD, INC.; AARK HOSPITALITY CWH FR, INC.; AARK HOSPITALITY DANVILLE FR, LLC; AARK HOSPITALITY DUNMORE FR, LLC; AARK HOSPITALITY EAST STROUDSBURG FR, LLC; AARK HOSPITALITY FRAZER, INC.; AARK HOSPITALITY FTW FR, INC.; AARK HOSPITALITY GLASSBORO FR, LLC; AARK HOSPITALITY GLOUCESTER INC.; AARK HOSPITALITY LANGHORNE FR, INC.; AARK HOSPITALITY MEDIA, INC.; AARK HOSPITALITY MOORESTOWN, INC.; AARK HOSPITALITY MORRISVILLE FR, INC.; AARK HOSPITALITY MT. LAUREL, INC.; AARK HOSPITALITY MT. LAUREL II, INC.; AARK HOSPITALITY NORRISTOWN, INC.; AARK HOSPITALITY NORTHFIELD, INC.; AARK HOSPITALITY PENNSDALE FR, LLC; AARK HOSPITALITY PHILADELPHIA, INC.; AARK HOSPITALITY SCRANTON FR, LLC; AARK HOSPITALITY SICKLERVILLE TK, INC.; AARK HOSPITALITY SICKLERVILLE, LLC; AARK HOSPITALITY SPRINGFIELD, INC.; AARK HOSPITALITY VINELAND MALL, INC.; AARK HOSPITALITY VINELAND, INC.; AARK HOSPITALITY VOORHEES, INC.; AARK HOSPITALITY VOORHEES II, INC.; AARK HOSPITALITY WILKS BARRE FR, LLC, and DOE DEFENDANTS 1-10, | Civil Action No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

|                    |
| Defendants.        |

Brianna Elmer ("Elmer" or "Plaintiff"), on behalf of herself and all others similarly situated, alleges as follows:

## INTRODUCTION

1.    This is a class and collective action brought on behalf of "Tipped Employees," who work or have worked at restaurants operating under the trade names "Friendly's" or "Tilted Kilt Pub & Eatery" ("Restaurants") that are (or were) owned, operated, managed, and/or otherwise controlled by Defendants Amol R. Kohli ("Kohli") and AARK Hospitality, AARK Enterprises, AARK Restaurant Group, LLC ("AARK Restaurant Group"), AARK Enterprises, Inc. ("AARKEI"), AARK Enterprises NJ, Inc. ("AARK Enterprises NJ"), AARK Enterprises PA, Inc. ("AARK Enterprises PA"), AARK Hospitality Bensalem FR, Inc. ("AARKH Bensalem"), AARK Hospitality Chadds Ford, Inc. ("AARKH Chadds Ford"), AARK Hospitality CWH FR, Inc. ("AARKH Cornwells Heights"), AARK Hospitality Danville FR, LLC ("AARKH Danville"), AARK Hospitality Dunmore FR, LLC ("AARKH Dunmore"), AARK Hospitality East Stroudsburg FR, LLC ("AARKH Stroudsburg"), AARK Hospitality Frazer, Inc. ("AARKH Frazer"), AARK Hospitality FTW FR, Inc. ("AARKH Fort Washington"), AARK Hospitality Glassboro FR, LLC ("AARKH Glassboro"), AARK Hospitality Gloucester FR, LLC ("AARKH Gloucester"), AARK Hospitality Langhorne FR, Inc. ("AARKH Langhorne"), AARK Hospitality Media, Inc. ("AARKH Media"), AARK Hospitality Moorestown, Inc. ("AARKH Moorestown"), AARK Hospitality Morrisville FR, Inc. ("AARKH Morrisville"), AARK Hospitality Mt. Laurel, Inc. ("AARKH Mt. Laurel"), AARK Hospitality Mt. Laurel II, Inc. ("AARKH Mt. Laurel II"), AARK Hospitality Norristown, Inc. ("AARKH Norristown"), AARK Hospitality Northfield, Inc. ("AARKH Northfield"), AARK Hospitality Pennsdale FR, LLC ("AARKH Pennsdale"), AARK

Hospitality Philadelphia, Inc. ("AARKH Philadelphia"), AARK Hospitality Scranton FR, LLC ("AARKH Scranton"), AARK Hospitality Sicklerville TK, Inc. ("AARKH Sicklerville TK"), AARK Hospitality Sicklerville, LLC ("AARKH Sicklerville"), AARK Hospitality Springfield, Inc. ("AARKH Springfield"), AARK Hospitality Upper Deerfield, Inc. ("AARKH Upper Deerfield"), AARK Hospitality Vineland Mall, Inc. ("AARKH Vineland Mall"), AARK Hospitality Vineland, Inc. ("AARKH Vineland"), AARK Hospitality Voorhees, Inc. ("AARKH Voorhees"), AARK Hospitality Voorhees II, Inc. ("AARKH Voorhees II"), AARK Hospitality Wilks Barre FR, LLC ("AARKH Wilkes Barre"), (collectively the "AARK Entities" and together with "Kohli", "Defendants"), and have been subject to the unlawful practices detailed herein.

2.     As detailed below, Defendants effectively function as a single integrated enterprise in operating their Restaurants.

3.     Indeed, Defendants do not adhere to corporate formalities and use their terms interchangeably when referring to their businesses and identifying the entity or individual responsible for the operations of the Restaurants. Defendants use various iterations of "AARK" in identifying the entity associated with any particular Restaurant(s) at any given time.

4.     As detailed below, upon information and belief, each of Defendants' Restaurants at issue maintain common ownership and share the same employment policies, including those relating to the compensation of Tipped Employees.

5.     As such, upon information and belief, the employment practices complained of herein applicable to all Tipped Employees employed at the Restaurants. Accordingly, Defendants are responsible for the employment practices complained of herein.

6.     Upon information and belief, at the present time, Defendants own and operate approximately ten restaurants doing business as "Friendly's," in New Jersey and Pennsylvania,

along with the Tilted Kilt Pub & Eatery ("Tilted Kilt") in Sicklerville, New Jersey.

7.    Defendants employ individuals in a tipped capacity, namely "servers" ("waiters and waitresses"), hosts/hostesses, and "server assistants" (formerly known as "fountain workers") in their Friendly's restaurants, and servers, bussers and bartenders in their Tilted Kilt restaurant (collectively, "Tipped Employees"), who are and/or were subjected to Defendants' unlawful pay practices.  As Tipped Employees, these individuals were primarily responsible for operating the "front of the house" and interacting with customers, including taking customers' orders, serving them their food/drink, and removing the used plates/glasses after the customers was done eating/drinking.

8.    As explained in detail below, Defendants systematically and willfully deprived Plaintiff and other Tipped Employees of minimum wages in violation of the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 201 *et seq.*, and the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et seq.*, and its implementing regulations, including N.J.C.A.12:56-14 *et seq.*,[1] by, among other things, failing to satisfy the notice requirements of the tip credit provisions of the FLSA and NJWHL.

9.    Due to Defendants' unlawful failure to properly inform Tipped Employees of their intention to utilize a "tip credit" as well as its other violations of the tip credit provisions set forth herein, Defendants have improperly applied a "tip credit" against the wages paid to Plaintiff and current and former Tipped Employees. The result of Defendants' conduct is that Tipped Employees were paid less than the mandated minimum wage.

10.    In addition, Defendants violated the NJWHL when they required Plaintiff and other

---

[1] The NJWHL and its implementing regulations are collectively referred to herein as "NJ State Law."

Tipped Employees to perform numerous job duties when there was no possibility for that employee to generate tips, such as before the restaurant opened or after it had closed or when a Tipped Employee was "cut" for the day (*e.g.*, they were no longer responsible for serving customers and instead had to perform solely cleaning/stocking work). This is in contravention of applicable wage law.

11.    In addition, Defendants required Plaintiff and current and former Tipped Employees to perform numerous other non-tipped duties that are related to their tipped occupation. This includes (but is not limited to) fill ketchup bottles, check and fill sugar caddies, and do assigned running "sidework" tasks.

12.    Further, Defendants required Plaintiff and current and former Tipped Employees to perform numerous other non-tipped duties that are unrelated to their tipped occupation. This includes (but is not limited to) cleaning the restaurant, cutting lemons, cleaning the monitors, rinsing out the coffee pots, running the silverware through the dishwasher, setting up/breaking down prep stations, taking out the trash, doing the dishes in the kitchen (if no dishwasher was working), stocking the refrigerator, mopping the fountain area, bring out dishes to restock server station, working the "expo" station in the kitchen area. Notably, much of this work was performed either before or after the restaurant opened/closed, necessarily meaning that Plaintiff and other Tipped Employees could not receive tips during this time.

13.    Indeed, Defendants had an inspection list of items servers were required to clean.

14.    Despite performing this non-tipped work, Defendants paid Plaintiff and current and former Tipped Employees a sub-minimum wage for performing this work.

15.    As a result of the aforementioned pay practices, Plaintiff and the members of the Classes (defined below) were illegally under-compensated for their work.

## SUMMARY OF CLAIMS

16.     Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the FLSA.

17.     Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Tipped Employees who worked for Defendants in the United States within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Class").

18.     In addition, Plaintiff also brings this action as a state-wide class action to recover unpaid wages pursuant to the NJ State Laws.

19.     Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Tipped Employees who worked for Defendants in New Jersey during the applicable period (the "NJ Class").

20.     The Collective Class and the NJ Class are hereafter collectively referred to as the "Classes."

21.     Plaintiff alleges on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendants for all hours during which they performed excessive "sidework" and/or work unrelated to their tipped occupation for which Defendants failed pay the mandatory minimum wage, as required by law and (ii) entitled to liquidated damages pursuant to the FLSA.

22.     Plaintiff also alleges on behalf of the Collective Class that they are: (i) entitled to unpaid minimum wages from Defendants for all hours worked for which Defendants failed to comply with the notice provisions of the tip credit and pay the mandatory minimum wage, as required by law and (ii) entitled to liquidated damages pursuant to the FLSA.

23.     Finally, Plaintiff alleges on behalf of the NJ Class that Defendants violated the NJ State Laws by failing to comply with the tip credit provisions, as required by law, and consequently failing to pay them the appropriate minimum wages for all hours worked.

**PARTIES**

24.     Plaintiff is a resident of the State of New Jersey, living in the Sicklerville area, who was employed by Defendants as a "server" at their Gloucester restaurant.  In the past, Plaintiff also worked as a server at the Vorhees restaurant location.  While employed as a Tipped Employee, Defendants failed to compensate Plaintiff Elmer properly for all hours worked.

25.     Pursuant to Section 216(b) of the FLSA, Elmer has consented in writing to be a plaintiff in this action, which is attached hereto as Exhibit "1."

26.     For a period of time, Defendants also paid Plaintiff above the full minimum wage rate, under a "Management" job code.  This was when Plaintiff was a "manager's assistant" where she was responsible for either opening or closing the restaurant.

27.     Defendant AARK Hospitality is an unregistered fictitious name that, upon information and belief, is used by Defendants to conduct their business operations in the State of New Jersey and the Commonwealth of Pennsylvania, from 10 Melrose Avenue, Suite 450 Cherry Hill, NJ 08003, as demonstrated in Exhibit "2."

28.     As illustrated in Exhibit "2," the AARK Hospitality "Human Resource Department" is identified as the entity announcing a rate hike for the Tipped Employees of Defendants' Friendly Restaurants.

29.     Defendant AARK Enterprises is an unregistered fictitious name that, upon information and belief, is used by Defendants to refer to its collective group of Restaurants in Pennsylvania and New Jersey and to conduct their business operations in the State of New Jersey

and the Commonwealth of Pennsylvania, from 10 Melrose Avenue, Suite 450 Cherry Hill, NJ 08003.

      30.    For instance, as demonstrated in the images from ZipRecruiter® and Talent.com below, Defendants use and/or have used "AARK Enterprises" to solicit and recruit employees for their Restaurants:



**Server - Ice Cream Scooper**

Friendly's AARK Enterprises  East Stroudsburg, PA

> Expired: October 18, 2021. Applications are no longer accepted.

SCOOPOLOGIST MISSION To bring the magic of our homemade ice cream to every guest through the creation of artistic quality, perfectly portioned ice cream treats. ESSENTIAL FUNCTIONS Treat our fragile, premium, premium ice creams and toppings with tota Server, Restaurant, Safety

Friendly's AARK Enterprises

**Address**
East Stroudsburg, PA
USA

*See* https://www.ziprecruiter.com/c/Friendlys-AARK-Enterprises/Job/Server-Ice-Cream-Scooper/-in-East-Stroudsburg,PA?jid=3f4f8d00a6c41d03&lvk=vtklCPyMgDvZF0po_FhlMQ.--MElEjvtHJ (last visited on April 18, 2022).

**(REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK)**

## Service Assistant – Dishwasher

Apply on company website

**Wilkes-Barre, PA, United States**
Friendly's – AARK Enterprises
Source : MyJobHelper.com

⚠ We are sorry. The job offer you are looking for is no longer available.

SERVICE ASSISTANT MISSION To maintain a clean, safe restaurant, and all dishware and utensils necessary to ensure a memorable dining experience for our guests.

ESSENTIAL FUNCTIONS Maintain a clean, neat, and safe environment. Maintain a constant stat Assistant, Dishwasher, Restaurant, Safety, Worker

*See* https://www.talent.com/view?id=f4f9f6933a16 (last visited on April 18, 2022).

31.     Defendant Kohli has also been publicly identified as an "owner" of at least one closed "Friendly's" location in Cumberland Mall and being "of AARK Enterprises."[2]

32.     Defendant AARK Enterprises, Inc. is a corporation registered to do business in the State of New Jersey that, upon information and belief, is used by Defendants to conduct their business operations.

33.     Defendant AARK Restaurant Group is a limited liability company, registered in the State of New Jersey, that, upon information and belief, is used by Defendants as a conduit to manage and/or operate various restaurant locations owned by Defendant Kohli in the State of New Jersey and the Commonwealth of Pennsylvania from 10 Melrose Avenue, Suite 450 Cherry Hill, NJ 08003.

---

[2] https://www.thedailyjournal.com/story/news/2017/03/10/cumberland-mall-friendlys-closes/99020988/ (last visited on April 18, 2022).

34.    For instance, an "Inspection Report for Food Establishments" from August of 2021 for a "Friendly's" location in Norristown, Pennsylvania, which is attached hereto as Exhibit "3," identifies Defendant AARK Restaurant Group as an "Owner" of that retail location:

| Norristown Health Center 1430 DeKalb Street, PO Box 311 Norristown, PA 19401 Phone: 610-278-5117 Fax: 610-278-5167 | Total Violations | |
|---|---|---|
| | Risk Violations Count | |
| | Arrival Time | |
| | Departure Time | |
| Food Facility Name Friendly's Ice Cream | Address 150 W GERMANTOWN PIKE NOF | |
| Owner Amol Kohli - AARK RESTAURANT GROUP, LLC | | Purpose of I Routine |
| FOODBORNE ILLNESS RISK FACTORS AND PUE | | |
| Circle designated compliance status (IN OUT N/O N/A) for each number item | | |
| IN=in compliance    OUT=not in compliance    N/O=not observed    N/A=not applicable | | |

(Emphasis supplied).

35.    Similarly, Defendant Kohli's profile on LinkedIn.com identifies him as "President" of Defendant AARK Restaurant Group.[3]

36.    Indicative of Defendant AARK Restaurant Group's involvement in the running of Defendants' Restaurants, Plaintiff recalls several instances where she went to the office of Defendant AARK Restaurant Group to collect the checks for Tipped Employees who worked at her location.

37.    Defendant AARKEI is a corporation, registered in the State of New Jersey, that, upon information and belief, is used by Defendants as a conduit to manage and/or operate various restaurant locations owned by Defendant Kohli in the State of New Jersey and the Commonwealth of Pennsylvania from 10 Melrose Avenue, Suite 450 Cherry Hill, NJ 08003.

38.    At the time of its incorporation, Defendant Kohli was the lone individual listed as a member of the board of directors.

39.    For instance, Defendant AARKEI was identified as the principle corporate

---

[3] https://www.linkedin.com/in/amolkohli (last visited on April 18, 2022).

intermediary for communication between Defendants and the various franchisors of the "Friendly's" chain of restaurants during bankruptcy court proceedings.[4]

40. Defendant AARK Enterprises NJ is a corporation, registered in the State of New Jersey at 10 Melrose Avenue, Suite 450 Cherry Hill, NJ 08003, that, upon information and belief, is used by Defendants as a conduit to manage and/or operate various restaurant locations owned by Defendants.

41. In a civil matter filed previously with this Court, AARK Enterprises NJ represented that it "owns and manages several Friendly's Restaurant franchises throughout Southern New Jersey." *AARK Enterprises, NJ, Inc v. AmGUARD Insurance Group, Inc.*, No. 15-cv-00943 (D. N.J.) ECF No. 15, ¶ 2.

42. At the time of its incorporation, Defendant Kohli was the lone individual listed as a member of the board of directors and the sole incorporator.

43. Defendant AARK Enterprises PA is a corporation, registered in the Commonwealth of Pennsylvania at 15 Beech Tree Drive Glen Mills, PA 19342, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate various restaurant locations owned by Defendants in the Commonwealth of Pennsylvania from 10 Melrose Avenue, Suite 450 Cherry Hill, NJ 08003.

44. Defendant AARKH Bensalem is a corporation, registered in the Commonwealth of Pennsylvania, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 2369 Street Road Bensalem, PA 19020.

---

[4] *See*, *e.g.*, *In re: FIC Restaurants, Inc., et al.*, Docket No. 20-12807-CSS (D.Del. Bankr.), ECF Doc. 229.

45.    Defendant AARKH Chadds Ford is a corporation, registered in the Commonwealth of Pennsylvania at 15 Beech Tree Drive Glen Mills, PA 19342, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants in or about Chadds Ford, Pennsylvania.

46.    Defendant AARKH Cornwells Heights is a corporation, registered in the Commonwealth of Pennsylvania, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 106 Neshaminy Mall Cornwell Heights, PA 19020.

47.    Defendant AARKH Danville is a corporation, registered in the Commonwealth of Pennsylvania, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 310 Red Roof Road Danville, PA 17821.

48.    Defendant AARKH Dunmore is a corporation, registered in the Commonwealth of Pennsylvania, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 708 North Blakely Street Dunmore, PA 18512.

49.    Defendant AARKH Stroudsburg is a corporation, registered in the Commonwealth of Pennsylvania, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 114 Brown Street East Stroudsburg, PA 18301.

50.    Defendant AARKH Frazer is a corporation, registered in the Commonwealth of Pennsylvania at 15 Beech Tree Drive Glen Mills, PA 19342, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned

by Defendants in or about Frazer, Pennsylvania.

51.    Defendant AARKH Fort Washington is a corporation, registered in the Commonwealth of Pennsylvania, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 325 Pennsylvania Avenue Fort Washington, PA 19034.

52.    Defendant AARKH Glassboro is a corporation, registered in the State of New Jersey, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 1100 North Delsea Drive Glassboro, NJ 08028.

53.    Defendant AARKH Gloucester is a corporation, registered in the State of New Jersey, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 100 Premium Outlets Drive Blackwood, NJ 08012.

54.    Defendant AARKH Langhorne is a corporation, registered in the Commonwealth of Pennsylvania, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 1462 East Lincoln Highway Langhorne, PA 19047.

55.    Defendant AARKH Media is a corporation, registered in the Commonwealth of Pennsylvania at 15 Beech Tree Drive Glen Mills, PA 19342, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants in or about Media, Pennsylvania.

56.    Defendant AARKH Moorestown is a corporation, registered in the State of New Jersey, that, upon information and belief, is (or was) used by Defendants as a conduit to manage

and/or operate a "Friendly's" restaurant owned by Defendants in or about Moorestown, New Jersey.

57.     Defendant AARKH Morrisville is a corporation, registered in the Commonwealth of Pennsylvania, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 897 West Trenton Avenue Morrisville, PA 19067.

58.     Defendant AARKH Mt. Laurel is a corporation, registered in the State of New Jersey, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants in or about Mt. Laurel, New Jersey.

59.     Defendant AARKH Mt. Laurel II is a corporation, registered in the State of New Jersey, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants in or about Mt. Laurel, New Jersey.

60.     Defendant AARKH Norristown is a corporation, registered in the Commonwealth of Pennsylvania, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 150 W. Germantown Pike Norristown, PA 19401.

61.     Defendant AARKH Northfield is a corporation, registered in the State of New Jersey, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants in or about Northfield, New Jersey.

62.     Defendant AARKH Pennsdale is a corporation, registered in the Commonwealth of Pennsylvania, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 300 Lycoming Mall Circle Pennsdale, PA 17756.

63.    Defendant AARKH Philadelphia is a corporation, registered in the Commonwealth of Pennsylvania at 15 Beech Tree Drive Glen Mills, PA 19342, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants in Philadelphia, Pennsylvania.

64.    Defendant AARKH Scranton is a corporation, registered in the Commonwealth of Pennsylvania, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants in or about Scranton, Pennsylvania.

65.    Defendant AARKH Sicklerville TK is a corporation, registered in the State of New Jersey, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate the franchise of "Tilted Kilt Pub & Eatery" owned by Defendants, located at 645 Berlin Cross Keys Road Sicklerville, New Jersey ("Tilted Kilt").[5]

66.    Defendant AARKH Sicklerville is a limited liability company, registered in the State of New Jersey, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate the "Tilted Kilt" owned by Defendants, located at 645 Berlin Cross Keys Road Sicklerville, New Jersey.

67.    Defendant AARKH Springfield is a corporation, registered in the Commonwealth of Pennsylvania at 15 Beech Tree Drive Glen Mills, PA 19342, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 1250 Baltimore Pike Springfield, PA 19064.

68.    Defendant AARKH Vineland Mall is a corporation, registered in the State of New

---

[5] Notably, the corporate website for "Tilted Kilt" states that "[e]ach Tilted Kilt Pub & Eatery is an independently owned and operated franchise."  https://tiltedkilt.com/contact-tk (last visited on April 18, 2022).

Jersey, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants in or about Vineland, New Jersey.

69.     Defendant AARKH Vineland is a corporation, registered in the State of New Jersey, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants in or about Vineland, New Jersey.

70.     Defendant AARKH Voorhees is a limited liability company, registered in the State of New Jersey, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants in or about Voorhees, New Jersey.

71.     Defendant AARKH Voorhees II is a corporation, registered in the State of New Jersey, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 9103 Town Center Boulevard Voorhees, NJ 08043.

72.     Defendant AARKH Wilkes Barre is a corporation, registered in the Commonwealth of Pennsylvania, that, upon information and belief, is (or was) used by Defendants as a conduit to manage and/or operate a "Friendly's" restaurant owned by Defendants at 778 Kidder Street Wilkes Barre, PA 18702.

73.     Upon information and belief, all of the above Defendants conduct operations from the same location and may be served at 10 Melrose Ave, Suite 450 Cherry Hill, NJ 08003.

74.     Defendant Kohli is, upon information and belief, a resident of the State of New Jersey at 6 Red Gravel Circle Sicklerville, NJ 08081.

75.     In 2017, Kohli publicly proclaimed to own and/or operate seventeen restaurants in

the mid-Atlantic region, including twelve "Friendly's" locations in the Philadelphia area.[6]

76.    Two years earlier, an article published by the Philadelphia Inquirer exclaimed that "Kohli oversees 700 full- and part-time employees and a $3.1 million annual payroll.  Total revenue for all his restaurants is projected to exceed $15 million next year. . ."[7]

77.    According to a letter of December 16, 2021, that was sent to Defendants' "staff," Defendant Kohli is the "President" of "AARK Hospitality".[8] Notably, Defendant Kohli is the signatory of the letter announcing the change in the hourly rate of pay, indicative of his control over the labor policies at issue in this Complaint.

78.    Moreover, although he does not reside in the Commonwealth of Pennsylvania, Defendant Kohli is identified the "President" of Defendants AARK Enterprises PA, AARKH Chadds Ford, AARKH Frazer, AARKH Media, AARKH Philadelphia, and AARKH Springfield in the corporate documents filed on their behalf with the Corporations Bureau of the Commonwealth of Pennsylvania Department of State.

79.    Further, Defendant Kohli self-identified as "President" of Defendants AARKEI, AARKH Bensalem, AARKH Cornwells Heights, AARKH Danville, AARKH Dunmore, AARKH Stroudsburg, AARKH Gloucester, AARKH Langhorne, AARKH Morrisville, AARKH Norristown, AARKH Springfield, AARKH Voorhees II, and AARKH Wilkes Barre, in bankruptcy court proceedings.[9]

---

[6] *See* https://www.franchise500.com/article/299675 (last visited on April 18, 2022).

[7] https://www.inquirer.com/philly/business/small_business/20151222_Precocious _restaurateur_opens_his_ninth_area_Friendly_s_franchise.html (last visited on April 18, 2022).

[8] *See* Exhibit "2."

[9] *See*, *e.g.*, *In re: FIC Restaurants, Inc., et al.*, Docket No. 20-12807-CSS (D.Del.Bankr.), ECF Doc. 229.

80.     Defendant Kohli also serves as a personal "Guarantor" of the legal obligations of Defendants AARKEI, AARKH Bensalem, AARKH Cornwells Heights, AARKH Danville, AARKH Dunmore, AARKH Stroudsburg, AARKH Gloucester, AARKH Langhorne, AARKH Morrisville, AARKH Norristown, AARKH Springfield, AARKH Voorhees II, and AARKH Wilkes Barre on account of their involvement with the "Friendly's" brand.[10]

81.     Additionally, as related above, Defendant Kohli's profile on LinkedIn.com identifies him as "President" of Defendant AARKRG.[11]

82.     It is believed and, therefore, averred that Defendant Kohli identifies (or has identified) himself as a "President" of each of the AARK Entities.

83.     It is believed and, therefore, averred that Defendant Kohli is the sole officer, member, shareholder, and/or member interest holder of the AARK Entities.

84.     It is believed and, therefore, averred that Defendant Kohli occupies the sole executive position within the AARK Entities.

85.     It is believed and, therefore, averred that Defendant Kohli is the sole individual involved in corporate decision-making and policy-making processes within the organizational structure of the AARK Entities.

86.     Indicative of Defendant Kohli's control over the AARK Entities' operations is the fact that, in 2020, Defendants' applications for the Paycheck Protection Program loans were processed through the same banking institution – Parke Bank – and some of them identified Sicklerville, New Jersey (i.e., Defendant Kohli's hometown) as the "Location" of their business

---

[10] *Id.*, at p. 10.

[11] https://www.linkedin.com/in/amolkohli (last visited on April 18, 2022).

(even when the situs of the "Friendly's" franchise was in another state).[12]

87.     Also indicative of Defendant Kohli's involvement is the fact that he is identified as an owner on the "Retail Food Inspection Report" from January of 2021 for a "Friendly's" location in Glassboro, New Jersey, which is attached hereto as Exhibit "4."

88.     Further, and indicative of Defendant Kohli's involvement in the running of the Restaurants, Plaintiff recalls several instances where Defendant Kohli came into the Friendly's location where Plaintiff was employed, and would hold meetings with Tipped Employees.

89.     Thus, upon information and belief, Defendant Kohli owns, operates, and/or otherwise controls the Restaurants.

90.     Further, and indicative of Defendants' interchangeability and overlapping management and operational structure, upon information and belief, when Defendants' location in Fort Washington closed, a notice was posted on the inside of front door to the restaurant, directing potential customers to patronize Defendants' "Friendly's" locations nearby (as opposed to other "Friendly's" locations not affiliated with Defendants).[13]

91.     In his capacity as owner and operator, Defendant Kohli exercises sufficient control over the labor policies and practices of the Restaurants complained of herein to be considered the employer of Plaintiff and the Classes for purposes of the FLSA and NJ State Laws.

92.     At all relevant times during the statutory period covered by this Complaint, Defendants, through their actions as an integrated enterprise, have transacted business within the State of New Jersey, including within this district.

93.     Defendants are a single integrated enterprise with a high degree of interrelated and

---

[12] *See* https://www.propublica.org/ (last visited on April 18, 2022).

[13] *See* Exhibit "5."

unified operations, sharing a common officer.  Each of these Defendants share the common labor policies and practices complained of herein.

94.    At all relevant times during the statutory period covered by this Complaint, Defendants have operated their business as a "single enterprise" within the definition of Section 203(r)(1) of the FLSA.  Defendants uniformly operated their Restaurants under common control for a common business purpose.  Upon information and belief, the sole reason for separate corporate entities was to limit the liability of Defendants.

95.    Upon information and belief, Defendants share common management between Restaurant locations, share common employees between locations, as well as share common human resources and payroll services.

96.    Indeed, Plaintiff recalls instances where Tipped Employees working in her "Friendly's" restaurant location had to go work at the "Tilted Kilt" due to that restaurant being short-staffed.  Plaintiff also recalls Tipped Employees at the "Tilted Kilt" becoming food runners at her restaurant location.

97.    Based on their representations to the public, courts and state regulatory bodies, Defendants have not adhered to any corporate formalities and use their names interchangeably and the AARK Entities act merely as a conduit for Defendant Kohli who operates under a pseudonym of "AARK."

98.    Indicative of this relationship is the letterhead of Exhibit "2," which merely says "AARK," but the letter is signed by Kohli as the "President" and business identified in the inside address is "AARK Hospitality," and the letter is going to the Tipped Employees of the Restaurants that are ostensibly in the name of different AARK Entities.

99.    Due to their lack of adherence to corporate formalities and ubiquitous use of

"AARK", the Defendants collectively are "employers" of the Tipped Employees.

100.    Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff. Plaintiff believes there are additional entities employing Tipped Employees that have not yet been identified. Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each Defendant. In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.

## JURISDICTION AND VENUE

101.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq.*

102.    Further, this Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims derive from a common nucleus of operative facts.

103.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

104.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

105.    The crux of the FLSA and the NJWHL is, *inter alia*, that all employees are entitled to be paid mandated minimum wages for all hours worked.

106.    Contrary to these basic protections, Plaintiff and the members of the Classes were deprived of the mandated minimum wage for all hours they worked.

107.    Plaintiff and the members of the Classes are, or were, Tipped Employees employed by Defendants.

108.    Upon information and belief, all of the Defendants' locations are/were operated under uniform policies/procedures applicable to all members of the Classes, including subjecting Tipped Employees to the unlawful pay practices complained of herein.

109.    Defendants govern and administer each restaurant location in a virtually identical manner so that, among other things, customers can expect and receive the same kind of customer service regardless of the specific restaurant location that a customer visits.

110.    For example, all of Defendants' Restaurants operating as "Friendly's" use the brand name "Friendly's" at their respective location, offers the same basic array of products and services to the general public, utilize the same "point of sale" ("POS") system, and have the same basic hours of operation.  Further, all the restaurant locations advertise together on the same website.

111.    Indeed, Defendants' Restaurants can "share" Tipped Employees and management level personnel.  Plaintiff is aware of Tipped Employees going from one of Defendants' Restaurants to cover staff shortages at another Restaurant.

112.    Moreover, Plaintiff recalls Tipped Employees moving between the "Friendly's" restaurant and the "Tilted Kilt" restaurant – even if it was for a single shift to cover a staff shortage.

113.    As such, upon information and belief, the employment practices complained of herein occurred at all of Defendants' locations as Defendants utilized common labor policies and practices at each of their locations.  Accordingly, Defendants are responsible for the employment practices complained of herein.

**Plaintiff's Experience Working For Defendants**

114.    As set forth above, Plaintiff was employed by Defendants as a "server" in their

Gloucester location in the State of New Jersey.  The restaurant is located at the Gloucester Premium Outlets.  Elmer worked at this location from in or about November 2021 through February 8, 2022.

115.    Elmer occasionally worked at the Vorhees and Cinnaminson Restaurant locations.

116.    When Elmer worked at these locations, she was not paid by a different entity.

117.    Elmer was paid an hourly cash wage rate from Defendants and earned tips from customers who chose to leave a gratuity.

118.    Elmer's most recent hourly wage rate from Defendants was $5.13 an hour.  Elmer does not ever recall the hourly wage being raised by Defendants above $5.13 for any day worked, irrespective of how little tips were earned or the type of work performed.

119.    Elmer typically worked for Defendants at the Gloucester Restaurant several days a week, usually Friday, Saturday, and Sunday, with her shift lasting typically four to six hours.

120.    Plaintiff would typically arrive at around 10:30 a.m. to help set up the restaurant for the day.  Although the restaurant opened at 11:00 a.m., Plaintiff often did not get her first table until 11:30 a.m., and occasionally as late as 12:00 p.m.

121.    Elmer recorded her work time by logging into Defendants' timekeeping system through the point-of-sale ("POS") system.  Plaintiff believes the timekeeping system was called "Micros."

122.    Plaintiff believes that she had to "tip out" the hostess and server assistants 3% of her gross sales, irrespective of how much in tips Elmer actually received during her shift. Consequently, on several occasions, after tipping out her co-workers, Plaintiff would walk out of the restaurant with little to no money. Indeed, Plaintiff recalls one instance in January of 2022 where, despite working a full shift, Plaintiff left with only $8.00 in tips.

123.    Elmer typically stayed anywhere from one-half hour to an hour after the last table left for the day.

124.    Defendants required Elmer and other Tipped Employees to stay after their last table left so that they could perform certain tasks in order to ensure the restaurant was prepared for its customers after their shift was over and that the restaurant was cleaned and prepared for the following day's business. These tasks included, among other things: taking out the trash; stocking the refrigerator; stocking the soda fountain area; cleaning her section of the Restaurant; replacing the menu insert when needed; washing dishes (if there was no dishwasher on duty); making coffee; cutting lemons; vacuuming the restaurant; resetting the server station; cleaning the monitors; sweeping under the tables; filling the sugar caddies; checking the ketchup bottles on the tables; checking and, if necessary, replacing the salt & pepper shakers; filling the dressings and ensuring there was sufficient back up; and cleaning the coffee pots.

125.    Some of the other tasks Plaintiff performed included: filling the sauces; cutting tomatoes and onions; filling the mandarin oranges container; filling the salad section in the server area (including ensuring that dressing containers were filled); making chocolate milk; and filling the napkin and silverware containers.

126.    Importantly, Elmer also performed several nontipped duties while she also had customers in the Restaurant.  These tasks included: refilling the salad station; refilling sauces and salad dressings; ensuring that items on the "EcoSure" checklist were cleaned; and running glassware through the dishwasher, drying and restacking.

127.    On average, Elmer estimates that she performed dishwashing duties approximately once a week, while still being paid at the tip credit rate.

128.    In total, Plaintiff estimates that she spent, on average, approximately thirty percent

(30%) of her work time performing nontipped tasks.

129.     Notably, Elmer was never instructed to clock in under a different job code when performing non-tip generating work or when working prior to or after the restaurant opened/closed. Indeed, to the best of Elmer's knowledge, Defendants did not keep track of such time separately from her entries into the POS system.

130.     Rather, on several occasions, Plaintiff recalls overhearing management personnel discussing watching their labor budget.  Management personnel also instructed her to put in "zero" when recording her tips at the end of her shift.

131.     The precise amount of time Elmer recorded as working each week, upon information and belief, is maintained in Defendants' employment and/or payroll records.

<u>**The Tip Credit Provision & Requirements**</u>

*FLSA Requirements*

132.     Rather than pay their Tipped Employees the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants chose to take a tip credit and pay these employees less than the applicable minimum wage.

133.     Under applicable law, in certain circumstances, it is permissible for an employer to take a tip credit and pay its employees less than the mandated minimum wage, provided that the employee's tips received from customers plus the cash wage paid by the employer equals at least the applicable minimum wage.

134.     According to the Department of Labor's ("DOL") Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum required cash wage of $2.13).

135.    As an initial matter, an employer can only claim a tip credit when an employee is in a tipped occupation.  Thus, if an employee is performing work unrelated to their tipped occupation, they must be paid the full minimum wage.  *See, e.g.,* 29 C.F.R. § 531.51; 29 C.F.R. § 531.59(b).

136.    Further, if an employee performs work that is related to their tipped occupation but does not directly generate tips, no tip credit can be claimed and the full minimum wage must be paid if such work is performed in excess of twenty percent (20%) of the employee's workweek.  *See, e.g.,* 29 C.F.R. § 531.56(e).

137.    Thus, if an employee performs unrelated work to their tipped occupation or performs excessive non-tipped work (typically referred to as "sidework"), that employee must be paid the full minimum wage for such time and no tip credit can be claimed by the employer.

138.    In other instances, an employer can claim a tip credit against a Tipped Employee's wages if certain other conditions are met.

139.    As is made plain in Fact Sheet #15, in order to claim a tip credit, the employer must comply with five strict notification requirements.

140.    The five items an employer must tell a tipped employee are spelled out in the statute, implementing regulation, and Fact Sheet #15.  *See* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b);[14] Fact Sheet #15; *see also Rafferty v. Denny's, Inc.,* 13 F. 4th 1166, 1192-93 (11th Cir. 2021); *Wintjen v. Denny's, Inc.,* No. 19-CV-69, 2021 U.S. Dist. LEXIS 35199 (W.D. Pa. Feb. 25,

---

[14] Importantly, courts have held that 29 CFR § 531.59(b), which requires disclosure of the five requirements of the tip credit provision, simply reaffirms what employers were required to do under the statute.  *See, e.g.*, *Howard v. Second Chance Jai Alai LLC*, No: 5:15-cv-200, 2016 U.S. Dist. LEXIS 78538, *11 (M.D. Fl. June 16, 2016) ("expressly requiring the disclosure of five specific provisions, as in the final amended rule, does not require employers to do any more than what they were already obligated to do under section 203(m)").

2021).

141.    First, the employer must notify the employee of the amount of the cash wage the employer is paying the Tipped Employee and that amount must equal at least $2.13 per hour.

142.    Second, the employer must notify the Tipped Employee of the amount the employer is claiming as a tip credit.  In accordance with the FLSA, the tip credit claimed cannot exceed $5.12 per hour.

143.    Third, the employer must inform the Tipped Employee that the tip credit claimed cannot exceed the actual amount of tips received by the employee.  In effect, the employer must inform the employee that the employee must still earn the mandated minimum of $7.25 per hour between the amount of the tip credit taken by the employer and the amount of tips earned by the employee.

144.    Fourth, the employer must notify the Tipped Employee that all tips received are to be retained by the employee except for a valid tip pooling arrangement.

145.    Finally, the Tipped Employee must be informed by the employer that the tip credit will not apply unless the employee has been informed of these provisions.

146.    In short, Fact Sheet #15 effectively sets forth in plain English what is required under both the statute and its implementing regulations, including 29 C.F.R. § 531.59(b), for an employer to properly claim a tip credit.

147.    An employer bears the burden of showing that it has satisfied all of the notification requirements before any tips can be credited against the employee's hourly wage.  If an employer cannot demonstrate its compliance with this notification requirement, no credit can be taken and the employer is liable for the full minimum wage.

148.    Further, where a tipped employee earns less in tips than the tip credit claimed, the

employer is required to make up the difference.  Stated another way, if a tipped employee earns less than $5.12 per hour in tips (the maximum tip credit permissible where the employer pays the employee $2.13 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.13 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

149.    As set forth herein, Defendants failed to comply with certain of the FLSA's provisions regarding the claiming of a tip credit.

### New Jersey's Requirements

150.    New Jersey mandates a higher minimum cash wage and requires employers to pay at least $5.13 per hour. Thus, under New Jersey law, the maximum tip credit is $7.87 per hour.

151.    Indeed, the New Jersey minimum wage has risen over the years and has been higher than the federal minimum wage for some time.

| Year | Minimum Wage | Minimum Cash Wage | Maximum Tip Credit |
|------|--------------|-------------------|--------------------|
| 2022 | $13.00 | $5.13 | $7.87 |
| 2021 | $12.00 | $4.13 | $7.87 |
| 2020 | $11.00 | $3.13 | $7.87 |
| 2019 | $8.85 | $2.13 | $6.72 |
| 2018 | $8.60 | $2.13 | $6.47 |
| 2017 | $8.44 | $2.13 | $6.31 |
| 2016 | $8.38 | $2.13 | $6.25 |

See  https://www.dol.gov/agencies/whd/state/minimum-wage/tipped (last visited February 18, 2022).

152.    As such, an employer cannot be said to have complied with New Jersey's tip credit

notification requirements where the employer simply relies on United States Department of Labor mandated posters, as said posters do not explicitly identify the tip credit amount in New Jersey (as it differs from the FLSA tip credit amount).

153.    Moreover, under NJ State Law, an employer may pay a tipped employee as the minimum cash wage identified above only if the employer can "demonstrate that the balance of the . . . minimum wage required under State law is paid through gratuities in accordance with N.J.A.C. 12:56-4 and 12:56- 8."  N.J.A.C. 12:56-14.4(b).

154.    With respect to the gratuities' requirement, under NJ State Law the employer must have an agreement with its employees regarding how tips are calculated and that agreement must either be based on actual tips received, gross sales, or a method approved by the Commissioner. N.J.A.C. 12:56-8.4.

155.    Thus, under the NJ State Law, an employer may not take advantage of the tip credit unless they satisfy the recordkeeping requirement, which requires employers to keep records "containing the total gratuities received by each employee during the payroll week." N.J.A.C. 12:56-4.6.

156.    Moreover, during the applicable period, New Jersey implemented a regulation that substantially mirrors the federal regulations regarding tip credit notification – making plain that New Jersey also requires tip credit notification. *See* N.J.A.C. 12:56-3.5(q).

### Defendants' Failure To Comply With Applicable Wage Laws

*FLSA Violations*

157.    Defendants violated the FLSA by requiring Plaintiffs and their other Tipped Employees to perform excessive "sidework" and/or work unrelated to their occupation as tipped employees.

158.    Plaintiffs and other Tipped Employees routinely spent in excess of 20% of their workweek performing "sidework" and/or tasks unrelated to their occupation as servers, baristas, and/or bussers.

159.    Despite this, after completing their training, Defendants paid their Tipped Employees a subminimum wage for all hours worked when clocked in under a Tipped Employee job code (e.g., "server" job code), irrespective of what job tasks the Tipped Employee was performing and/or whether they could generate a tip from completing such a task.

160.    Indeed, Defendants violated applicable wage laws by requiring Tipped Employees, including Plaintiff, to be paid a sub-minimum wage for work performed when the Tipped Employee had no opportunity to generate tips, such as before or after the restaurant was opened/closed to the public and/or when the Tipped Employee was not assigned any customers. At no time did Defendants have Plaintiff or other Tipped Employees clock in under a different code or pay these individuals the full minimum wage, instead electing to continue to pay them the minimum cash wage and continuing to claim the tip credit despite the fact that these employees could not earn tips during this time.

161.    Moreover, as explained above, the DOL has very specific requirements regarding what an employer must notify his/her employee of if that employer intends to claim a tip credit.

162.    Rather than comply with the notification requirements set forth in the regulations and made plain in Fact Sheet #15, Defendants chose to simply pay their Tipped Employees a sub-minimum wage. In short, Defendants failed to conform to the strict regulatory requirements necessary to satisfy the tip credit notification provisions.

163.    The Third Circuit and district courts across the country have held that where an employer fails to satisfy any one of the notification requirements, the employer forfeits the tip

credit and must pay the employee the full minimum wage.

164. Indeed, Plaintiff does not ever recall being notified by Defendants that it intended to take a "tip credit," nor how much that amount would be. Further, Plaintiff does not recall being notified by Defendants that they could not take a tip credit in excess of how much she earned in tips or that Defendants could not take a tip credit unless they informed Plaintiffs about their intent to take a "tip credit."

165. Instead, Plaintiff only recalls receiving notification that Defendants were increasing the minimum cash wage Defendants were paying its Tipped Employees. *See, e.g.,* Exhibit "2" (letter from Defendants dated December 16, 2021, advising Plaintiff "that effective January 3, 2022, the server rate will be $5.13").

166. Other than this letter, Plaintiff does not recall receiving anything in writing from Defendants notifying of her any change in the amount of tip credit Defendants were claiming.

167. These failures to provide complete and accurate tip credit notification constitute violations of the tip credit requirements. *See, e.g.,* 29 U.S.C. § 203(m); 29 C.F.R. § 531.59(b).

168. Other actions by Defendants also indicate their wholesale violation of the applicable tip credit provisions.

169. For example, Defendants violated the tip credit provisions as they did not adjust the Plaintiff's hourly cash wage for those shifts where Plaintiff earned little to no tips. Indeed, recently, Plaintiff recalls working one Friday and only receiving $8.00 in tips.

170. Additionally, Plaintiff recalls management personnel instructing her and other Tipped Employees to put in "zero" when declaring their tips in the POS system, even if they had earned tips during their shift. Upon information and belief, management personnel would then enter into the POS system an amount the servers were required to claim as tips in order to make it

appear as though servers had earned at least minimum wage.

171.    Further, Plaintiff also recalls individuals working as an "expo" participating in the tip pool – even though the expeditor worked in the "back of the house" (e.g., kitchen area). Because expediters work in the back of the house and are not considered customer facing positions, it is improper for a tip credit to be claimed when a tipped employee must share their tips with such an individual.

172.    Finally, Defendants also failed to comply with 29 C.F.R. § 516.28 insofar as it failed to notify employees in writing whenever the tip credit claimed by Defendants changed. This includes both (i) providing notice, in writing, every time the maximum amount of tip credit that could be claimed changed due to a change in the New Jersey minimum wage rate; and (ii) providing notice, in writing, when the amount of tip credit claimed by Defendants changed from the previous week due to either insufficient tips being earned or a different cash wage being paid by Defendants due to Covid.

173.    For example, Plaintiff's recent paystub covering the pay period 12/27/2021 through 01/09/2022 indicates that Plaintiff earned both a server pay rate of $5.13 per hour and a "server (COVID)" pay rate of $8.00 per hour.  *See* Exhibit "6" (redacted for purposes of privacy).  Other paystubs for 2021 indicate Plaintiff only receiving a "server (COVID)" pay rate of $8.00 per hour. *See* Exhibit "7" (redacted for purposes of privacy).

174.    Plaintiff believes that she started receiving this $8.00 per hour pay when she came back to work for Defendants during the COVID pandemic. She does not recall being informed by Defendants what the tip credit amount Defendants were claiming was.

175.    Indeed, Plaintiff does not recall ever receiving any documentation indicating what the change in the tip credit amount being claimed by Defendants was.

176. As set forth above, these acts constitute violations of the tip credit requirements.

*NJ State Law Violations*

177. Defendants violated NJ State Law by failing to provide complete and accurate tip credit notification.

178. In addition to the notification requirements, NJ State Law, as noted above, imposes additional requirements on employers in the restaurant industry who wish to utilize the tip credit provisions to satisfy their minimum wage requirements.

179. Thus, if Defendants did not keep accurate records of the actual tips received by Tipped Employees based on statements provided by Tipped Employees or on customers' bills, they also failed to comply with NJ State Law insofar as there was no agreement between Defendants and the Tipped Employees that the tip credit claimed by Defendants was an "average" that was based on actual tips received, gross sales, or a method approved by the Commissioner.

180. Rather, Defendants took the maximum tip credit permissible irrespective of whether their Tipped Employee actually earned sufficient tips to legally warrant Defendants' tip credit claim.

181. In fact, Plaintiff recalls being instructed by management personnel to enter "zero" into the system when recording her tips for the workday – irrespective of the amount of tips Plaintiff actually earned that day.

182. Through these practices, Defendants ensured that their records were inaccurate and/or incomplete.

183. Thus, based on these practices, Defendants could not have complied with NJ State Law which, among other things, requires an employer to satisfy the recordkeeping requirement (*e.g*., N.J.A.C. 12:56-4.6) when claiming a tip credit.

184.    Stated another way, under NJ State Law, Defendants could not claim a tip credit unless they first demonstrated compliance with the recordkeeping provisions. Due to Defendants' failing to keep accurate records, no one can reasonably assert that the recordkeeping provisions were satisfied in the instant matter.

185.    Because of the above violations, Defendants owe the members of the NJ Class the amount taken as a tip credit for every hour they worked and were paid an hourly wage below the standard minimum wage.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

186.    Plaintiff brings this action on behalf of the Collective Class as a collective action pursuant to 29 U.S.C. §§ 207 and 216(b).  Plaintiff also brings this action as a class action pursuant to F.R.Civ.P. 23 on behalf of herself and the NJ Class for claims under the NJ State Laws.

187.    The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b).  The claims brought pursuant to the NJ State Laws may be pursued by all similarly-situated persons who do not opt-out of the NJ Class pursuant to F.R.Civ.P. 23.

188.    Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable.  While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, given that Defendants operates multiple restaurants, there are likely dozens of individuals in each of the Classes.

189.    Defendant has acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

190.    The claims of Plaintiff are typical of the claims of the Classes she seeks to represent.

Plaintiff and the members of the Classes work or have worked for Defendant and were subject to the same compensation policies and practices.

191.    Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)    whether Defendants have failed to pay the full minimum wage for each hour worked;

(b)    whether Defendants satisfied each of the requirements in order to claim a tip credit against each hour worked;

(c)    whether Defendants were precluded from claiming the tip credit during the period encompassed by this Complaint; and

(d)    whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

192.    Plaintiff will fairly and adequately protect the interests of the Classes as their interests are aligned with those of the members of the Classes they seek to represent.  Plaintiff have no interests adverse to the Classes she seeks to represent and have retained competent and experienced counsel.

193.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy. The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

194.    Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendants' pay

practices.

195.     Defendants have violated and, continue to violate, the FLSA and the NJWHL.  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a) and willful violations of the NJWHL.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

196.     Plaintiff, on behalf of herself and the Collective Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

197.     At all relevant times, Defendants have had gross revenues in excess of $500,000.00.

198.     At all relevant times, Defendants have been, and continues to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

199.     At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the Collective Class Members within the meaning of the FLSA.

200.     Pursuant to Defendants' compensation policies, rather than pay Tipped Employees the federally-mandated minimum wage, Defendants took a tip credit and paid Tipped Employees only the tip-credit wage when these employees spent time performing work unrelated to their tipped occupation and/or spent in excess of 20% of their time performing "sidework".

201.     Defendants have violated, and continues to violate, the FLSA.  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

202.     Due to Defendants' FLSA violations, Plaintiff, on behalf of herself and the members of the Collective Class, are entitled to recover from the Defendants, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Collective Class)**

203.    Plaintiff, on behalf of herself and the Collective Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

204.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed herein.

205.    The tip credit notification provisions set forth in the FLSA and the supporting federal regulations, apply to Defendants and protect Plaintiff and the members of the Collective Class.

206.    At all relevant times, Plaintiff and the members of the Collective Class were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a), and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. § 203(e), (r), and (s).

207.    At all relevant times, Plaintiff and the members of the Collective Class were employees of Defendants within the meaning of 29 U.S.C. § 203(e).

208.    At all relevant times, Defendants have been an enterprise engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. § 203(e), (r), and (s) with annual gross volume of sales made or business done in excess of $500,000.00.

209.    At all relevant times, Defendants employed Plaintiff and the members of the Collective Class within the meaning of 29 U.S.C. § 203(g).

210.    As stated above, Defendants had a policy and practice of failing to pay Tipped Employees the full minimum wage as Defendants were unable to claim a tip credit due to its failure

to provide complete and accurate tip credit notification.

211.    Defendants' failure to pay Plaintiff and all other members of the Collective Class the proper compensation due and owing is a violation of the FLSA.

212.    In violating the FLSA, Defendants acted willfully and with disregard of clearly applicable FLSA provisions.  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning 29 U.S.C. § 255(a).

213.    Due to the Defendants' FLSA violations, Plaintiff and the members of the Collective Class are entitled to recover from Defendants compensation for unpaid wages, an additional equal amount as liquidated damages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

214.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

### THIRD CLAIM FOR RELIEF
### NEW JERSEY MINIMUM WAGE VIOLATIONS
**(On Behalf of the NJ Class)**

215.    Plaintiff, on behalf of herself and the members of the NJ Class, realleges and incorporate by reference the paragraphs above as if they were set forth again herein.

216.    At all relevant times, Defendants have employed, and/or continues to employ, Plaintiff and each of the NJ Class Members within the meaning of the NJWHL.

217.    Pursuant to the NJWHL, Plaintiff and the members of the NJ Class were entitled to receive all compensation due and owing to them on their regular payday.

218.    As a result of Defendants' unlawful policies, Plaintiff and the members of the NJ Class have been deprived of compensation due and owing.

219.    Through the practices described above, Defendants paid Plaintiff and other Tipped

Employees less than the legal minimum wage for each hour worked.

220.    Plaintiff, on behalf of herself and the members of the NJ Class, are entitled to recover from Defendants the amount of unpaid minimum wages and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Collective Class and the NJ Class respectfully request the Court grant the following relief:

A.    Designation of this action as a collective action on behalf of the Collective Class;

B.    Designation of the action as a class action under F.R.Civ.P. 23 on behalf of the NJ Class;

C.    Designation of Plaintiff as representative of each of the Classes;

D.    Designation of Plaintiff's counsel as class counsel for each of the Classes;

E.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NJWHL;

F.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

G.    An award of unpaid minimum wages to Plaintiff and the members of the Classes;

H.    An award of liquidated damages to Plaintiff and members of the Classes;

I.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Classes; and

J.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury on all questions of fact raised by the complaint.

Date: April 18, 2022

Respectfully submitted,

**KALIKHMAN & RAYZ, LLC**

Lawrence Kalikhman
1051 County Line Road, Suite "A"
Huntingdon Valley, PA 19006
Telephone: 215-364-5030
Facsimile: 215-364-5029
Email: lkalikhman@kalraylaw.com

**CONNOLLY WELLS & GRAY, LLP**
Gerald D. Wells, III
Robert J. Gray
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Telephone: 610-822-3700
Facsimile: 610-822-3800
Email: gwells@cwglaw.com
        rgray@cwglaw.com

***Attorneys for the Plaintiff & the Proposed
Classes***