UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRIANNA ELMER, on behalf of herself and all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**AMOL R. KOHLI,** *et al.***,**<br><br>Defendants. | Case No. 22–cv–02303–ESK–AMD<br><br>OPINION |

**KIEL, U.S.D.J.**

   **THIS MATTER** is before the Court on defendants' motion to dismiss (Motion) (ECF No. 50–1 (Mov. Br.)) certain defendants and claims in plaintiff's second amended complaint (ECF No. 47 (Second Am. Compl.)).  Plaintiff filed an opposition to the Motion (ECF No. 53 (Opp'n)), to which defendants filed a reply (ECF No. 56).  For the following reasons, the Motion is **GRANTED** in part and **DENIED** in part.

   **I.  BACKGROUND**

   Plaintiff, on behalf of herself and a class of "Tipped Employees," commenced this action against defendants for providing insufficient tip credit notices and paying insufficient wages in violation of the Fair Labor Standards Act (FLSA) and New Jersey Minimum Wage and Hour Law (NJMWHL).  (Second Am. Compl. ¶¶ 1, 10.)[1]  Of the 26 defendants named, 25 defendants

---

[1] Plaintiff defines "Tipped Employees" as the servers, hosts/hostesses, server assistants, bussers, and bartenders defendants employed.  (Second Am. Compl. ¶ 8.)  Plaintiff brings her FLSA claims on behalf of a collective class of all "Tipped Employees" pursuant to 29 U.S.C. §§ 207 and 216(b).  (*Id.* ¶ 299.)  As to her NJMWHL

are corporate entities that own, operate, manage, and/or otherwise control various Friendly's and Tilted Kilt Pub & Eatery restaurants in New Jersey and Pennsylvania (Corporate Defendants).[2] (*Id.*) The remaining defendant is Amol R. Kohli, who plaintiff alleges is the "the lone individual listed as a member of the board of directors and the sole incorporator" of the Corporate Defendants. (*Id.* ¶¶ 30, 45.) Kohli is also identified as the Corporate Defendants' "President" and/or "CEO." (*Id.* ¶¶ 147–149.)

Between 2016 and 2021, plaintiff was employed by defendants as a server. (*Id.* ¶¶ 213, 214.) Plaintiff "primarily" worked at the Friendly's location in Gloucester, New Jersey but "occasionally worked at [defendants'] Voorhees, Glassboro, and Cinnaminson," New Jersey locations as well. (*Id.* ¶ 216.) Defendants AARK Hospitality Gloucester Inc. (AARKH Gloucester), AARK Hospitality Voorhees II, Inc. (AARKH Voorhees), and AARK Hospitality Glassboro FR, LLC managed and/or operated the Friendly's locations in Gloucester, Vorhees and Glassboro. The entity that managed and/or operated the Cinnaminson location is not named as a defendant. (*Id.* ¶¶ 75, 124.)

Throughout her employment, plaintiff "was paid an hourly cash wage rate," having received paychecks from AARKH Gloucester and AARKH

---

claims, plaintiff brings a class action pursuant to Federal Rule of Civil Procedure (Rule) 23 on behalf of "Tipped Employees" in New Jersey. (*Id.*)

[2] Of the Corporate Defendants, the following 13 entities are incorporated in and/or have a principal place of business in Pennsylvania: (1) AARK Enterprises PA, Inc.; (2) ARG Pennsylvania FR, Inc.; (3) AARKH Bensalem FR, Inc.; (4) AARK Hospitality CWH FR, Inc.; (5) AARK Hospitality Danville FR, LLC; (6) AARK Hospitality Dunmore FR, LLC; (7) AARK Hospitality East Stroudsburg FR, LLC; (8) AARK Hospitality Langhorne FR, Inc.; (9) AARK Hospitality Morrisville FR, Inc.; (10) AARK Hospitality Norristown, Inc.; (11) AARK Hospitality Scranton FR, LLC; (12) AARK Hospitality Springfield, Inc.; and (13) AARK Hospitality Wilks Barre FR, LLC (collectively, Pennsylvania Defendants). (Second Am. Compl. ¶¶ 39–42, 46–74, 80–91, 93–98, 100–107, 118–121, 127–131.)

Voorhees. (*Id.* ¶¶ 218, 222.)  While plaintiff earned tips from customers, she alleges that she and the "Tipped Employees" "perform[ed] excessive [side work] and/or work unrelated to their occupation as tipped employee[s]" for which they were underpaid.  (*Id.* ¶¶ 263–268.)

Although plaintiff predominately worked at the Friendly's managed and/or operated by AARKH Gloucester, she alleges that because all defendants operate as a "single integrated enterprise," they are all equally liable for having violated the FLSA and NJMWHL.  (*Id.* ¶ 2.)  For example, plaintiff notes that each defendant, including the Pennsylvania Defendants, used New Jersey addresses for their franchise agreements, bank accounts, leases, loan applications, corporate resolutions, insurance policies, and IRS notices.  (*Id.* ¶ 202.)  Furthermore, each restaurant is "controlled, operated[,] and ultimately linked together by … Kohli," such that they "share common management, … common employees, as well as … common human resources and payroll services."  (*Id.* ¶¶ 162, 163.)

Upon plaintiff having filed the original complaint on April 20, 2022 (ECF No. 1), all defendants except AARKH Gloucester and Kohli, moved to dismiss the complaint on August 26, 2022 (ECF Nos. 12, 13).  Pursuant to Rule 15(a)(1)(B), plaintiff filed an amended complaint (ECF No. 16), which defendants also moved to dismiss (ECF No. 19).  Defendants argued in their second motion to dismiss that this Court lacked personal jurisdiction over the Pennsylvania Defendants and that plaintiff failed to state a claim as to all defendants except AARKH Gloucester and Kohli.  (*See id.*)  On April 10, 2023, Judge Noel L. Hillman denied the second motion to dismiss and ordered the parties to conduct jurisdictional discovery.  (ECF No. 26.)

On November 3, 2023, plaintiff filed the three-count second amended complaint, adding information to establish this Court's jurisdiction over the Pennsylvania Defendants.  (*See* Second Am. Compl.)  On December 1, 2023,

defendants filed the Motion seeking dismissal of: (1) the Pennsylvania Defendants for lack of personal jurisdiction; (2) counts two and three against all defendants for lack of subject matter jurisdiction; (3) all defendants, except AARKH Gloucester, for failure to state a claim under a single integrated enterprise theory; and (4) the FLSA claims outside of the two year statute of limitations.  (*See* Mov. Br. p.11.)

On March 26, 2024, this action was reassigned to me.  (ECF No. 57.)

## II.  DISCUSSION

### A.   Personal Jurisdiction

In a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction."  *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). While a court "take[s] the allegations of the complaint as true," once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).  A plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state."  *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 462 (D.N.J. 2015) (quoting *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).  Yet, in reviewing the evidence, a court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992); *see also Metcalfe v. Renaissance Marine, Inc.* 566 F.3d 324, 330 (3d Cir. 2009).

Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  If a defendant is subject to a forum's general jurisdiction, the defendant can be sued there on any matter.  *Id*.  However, if a defendant

is solely subject to specific jurisdiction, the defendant may only face suit in the forum if its activities concerning the forum are related to the claims in the suit. *Id.*

### 1. **General Jurisdiction**

"To achieve general jurisdiction over a[] [defendant], affiliations with the forum state must be 'so continuous and systematic as to render [the defendant] essentially at home in the forum State.'" *Koch v. Pechota*, 744 F. App'x 105, 110 (3d Cir. 2018) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "[G]eneral jurisdiction applies where the defendant corporation's contacts with the forum are so extensive as to render it 'at home' in the forum state." *Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 221–22 (D.N.J. 2020). "For a corporation, 'the place of incorporation and principal place of business' are where it is 'at home' and are, therefore, the paradigm bases for general jurisdiction." *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *Daimler AG*, 571 U.S. at 137); *see Hannah v. Johnson & Johnson Inc.*, No. 18–10319, 2020 WL 3497010 (D.N.J. June 29, 2020) (noting that "unlike a limited liability company's citizenship for the purposes of determining diversity jurisdiction," which traces the citizenship of its members, "for the purposes of general personal jurisdiction, a limited liability company's citizenship is that of its principal place of business and state of incorporation"). Absent "an exceptional case" wherein a corporation's operations are substantial in another state, it is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business." *Id.* (alternation in original) (first quoting *Daimler AG*, 571 U.S. at 141 n.19) (second quoting *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016)).

As pleaded in the second amended complaint, each Pennsylvania Defendant is incorporated in Pennsylvania and/or has a principal place of

business in Pennsylvania.  (Second Am. Compl. ¶¶ 39–42, 46–74, 80–91, 93–98, 100–107, 118–121, 127–131.)  Hence, the Pennsylvania Defendants are presumptively "at home" in Pennsylvania.  *See Murphy*, 503 F. Supp. 3d at 221–22.  Plaintiff argues that because the Pennsylvania Defendants listed New Jersey addresses on their franchise agreements and bank accounts, meaning that they "could not have their vendors paid, nor collect on their accountable receivable, without contact with New Jersey," this Court can exercise general jurisdiction over them. (Opp'n pp. 32, 33.)  Plaintiff, however, does not cite to any legal authority that such contact meets the minimal threshold of being continuous and systematic.  I find that these facts do not give rise to any reasonable inference of general jurisdiction over the Pennsylvania Defendants.[3]

## 2. Specific Jurisdiction

"[S]pecific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 180 (D.N.J. 2016) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).  A court may exercise specific jurisdiction when: (1) the defendant "'purposefully directed [its] activities' at the forum"; (2) the litigation "'arise[s] out of or relate[s] to' at least one those activities"; and (3) doing so would "comport[] with 'fair play and substantial justice'" such that "the presence of some other considerations would not render jurisdiction unreasonable."  *Id.* (first alteration in original) (quoting *O'Connor v. Sandy*

---

[3] In further support of their position that this Court lacks general jurisdiction over the Pennsylvania Defendants, defendants argue that several Pennsylvania Defendants are not "alter egos" of a Corporate Defendant located in New Jersey. (Mov. Br. pp. 34–37.)  Our courts have announced various factors to consider when assessing personal jurisdiction under an alter ego theory.  *See Seltzer v. I.C. Optics, Ltd.*, 339 F.Supp.2d 601, 610 (D.N.J. 2004).  Since I find that general jurisdiction is already lacking, I will not address this argument.

*Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)).  This three-part test is designed to prevent a defendant from being "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated contacts' or of the 'unilateral activity of another party or third person.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 462, 475 (1985) (first quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)) (second quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)) (third quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

I find that plaintiff has failed to plead a *prima facie* case of specific jurisdiction.  Beyond arguing that "the Pennsylvania Defendants deliberately entered New Jersey by choosing another … [Corporate Defendant in New Jersey] to serve as its corporate headquarters and provide human resource and other administrative services," plaintiff makes no attempt to establish that any Pennsylvania Defendant conducted business or took any action in New Jersey that caused plaintiff harm.  (Opp'n pp. 35, 36; *see* Mov. Br. pp. 37, 38.)  Indeed, plaintiff's reference to the Pennsylvania Defendants' use of a New Jersey Corporate Defendant's address as their "corporate headquarters" is contradicted by plaintiff's allegations in the second amended complaint that Pennsylvania is the Pennsylvania Defendants' state of incorporation and principal place of business.  (Second Am. Compl. ¶¶ 39–42, 46–74, 80–91, 93–98, 100–107, 118–121, 127–131.)  The facts connecting the Pennsylvania Defendants to the New Jersey-based Corporate Defendants are insufficient to satisfy the first element of the specific jurisdiction test.

However, assuming the Pennsylvania Defendants had purposefully directed their activities to New Jersey, plaintiff only worked at the Friendly's in New Jersey.  (Second Am. Compl. ¶¶ 215, 216.)  Plaintiff, thus, had no contact with any Pennsylvania Defendant.  Although plaintiff raises claims on behalf of a class and collective, she fails to plead how any Pennsylvania

7

Defendant caused her harm. Furthermore, to the extent plaintiff argues that this Court has jurisdiction over all defendants because they operate a single integrated enterprise (Opp'n pp. 51, 52), our courts have expressly found that such a theory is only relevant for finding liability, "not for determining whether a court may exercise personal jurisdiction." *Horowitz v. AT&T Inc.*, No. 17–04827, 2018 WL 1942525, at *7 (D.N.J. Apr. 25, 2018). Accordingly, this Court lacks specific personal jurisdiction over the Pennsylvania Defendants.

### B. Subject Matter Jurisdiction

A motion to dismiss pursuant to Rule 12(b)(1) may attack subject matter jurisdiction facially or factually. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A factual attack challenges the allegations supporting the assertion of jurisdiction, which permits a court to weigh evidence outside of the pleadings and places the burden of proof on the plaintiff to demonstrate that jurisdiction exists. *Id.* A facial attack does not dispute the facts as alleged and essentially applies the Rule 12(b)(6) standard. *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 221 (D.N.J. 2022). Dismissal for lack of standing is properly brought under Rule 12(b)(1) "because standing is a jurisdictional matter." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)). "Article III standing requires a plaintiff to demonstrate: '(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief.'" *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022) (quoting *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020)). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Davis*, 824 F.3d at 346 (quoting *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)).

Here, defendants argue that as to counts two and three, plaintiff failed to establish that she suffered an "injury in fact." (Mov. Br. pp. 52–55.) Defendants note that while plaintiff alleges that she "received a deficient tip credit notification from … AARKH Gloucester," she fails to "specifically allege that" she was paid "less than minimum wage for completing" tasks such as table service. (*Id.* p. 53). Since these counts are "predicated largely on an alleged technical, procedural violation of the FLSA/NJ[M]WHL" and plaintiff "presents no allegations that any alleged compliance failure resulted in any real, concrete harm," defendants argue that plaintiff lacks standing to brings these counts, which should accordingly be dismissed for lack of subject matter jurisdiction. (*Id.* p. 54.)

Pursuant to the FLSA, "before claiming a tip credit, an employer must provide notice." *Wintjen v. Denny's, Inc.*, No. 19–00069, 2021 WL 734230, at *7 (W.D. Pa. Feb. 25, 2021). "[A]bsent such a notice, the employer may not claim a tip credit and must pay the full minimum wage." *Id.* Hence, when a plaintiff files a tip credit notice claim, our courts have understood the plaintiff to be "seeking recovery for monetary harm," rather than "seek[ing] redress for a purely technical violation of the FLSA or a mere 'informal injury.'" *Id.*

It is well settled that "[e]vidence of actual tips received does not reduce an employer's liability." *Sec'y United States Dep't of Lab. v. Mosluoglu, Inc.*, No. 22–02749, 2023 WL 5972044, at *3 (3d Cir. Sept. 14, 2023); *Marquez v. Upstairs at Chef Vola, Inc.*, No. 20–14631, 2022 WL 2274471, at *12 (D.N.J. June 23, 2022) (noting that regardless of whether a "[p]laintiff's income may have exceeded the FLSA's minimum wage2," defendants are "not alleviate[d] … of their obligation to pay minimum wage if" they did not comply with the tip credit notice requirement). In other words, an employer's failure to provide a plaintiff "the required notice before" taking a tip credit, "constitutes a concrete, financial injury." *Wintjen*, 2021 WL 734230, at *7. The same analysis applies

9

to NJMWHL claim. *See Hall v. Adelphia Three Corp.*, No. 21–01106, 2023 WL 1927386, at *9 (D.N.J. Jan. 31, 2023) (concluding "that it is likely that the New Jersey Supreme Court would recognize a claim for a violation of the NJWHL for failure to give tip credit notice in the same manner as set forth under the FLSA"). Accordingly, defendants' arguments to dismiss counts two and three are meritless.

### C. Failure to State a Claim

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the non-moving party. A motion to dismiss may be granted only if the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the sufficiency of a complaint, a court must take three steps. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). "First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim. *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 675). "Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679.) Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 679). "[A] complaint's allegations of historical fact continue to enjoy a highly favorable standard of review at the motion-to-dismiss stage of proceedings." *Id.* at 790.

10

For an employer to be liable under the FLSA or NJMWHL, the complaining-employee must have actually "work[ed] for the employer" or do "something in exchange for pay." *Huang v. Sakura Mandarin, Inc.*, No. 21–03757, 2022 WL 2052646, at *2 (E.D. Pa. June 7, 2022) (quoting 29 U.S.C. § 203(g)). An "employer is the one to benefit from this work" and "includes both the entity that pays the paycheck and 'any [other] person[s] acting directly or indirectly' in that entity's interest 'in relation to an employee.'" *Id.* (alterations in original) (quoting 29 U.S.C. § 203(d)). While all defendants, except AARKH Gloucester, argue that because they were not plaintiff's employer, the claims against them should be dismissed (Mov. Br. pp. 39–52), plaintiff argues that because defendants operate as a single enterprise, they are all liable to her (Opp'n pp. 37–52).

### 1. **Corporate Defendants**

"[T]he 'integrated enterprise' test for the presence of a single employer [is] a sort of labor-specific veil-piercing test" which potentially allows two entities to be treated as a single "employer." *Walsh v. Innovative Design & Dev. LLC*, No. 19–18495, 2023 WL 2424212, at *9 (D.N.J. Mar. 8, 2023) (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001)). "In determining whether the entities are a 'single integrated enterprise,' [a] court considers 'four labor-related characteristics of affiliated corporations: interrelation of operations; common management; centralized control of labor relations; and common ownership or financial control.'" *Id.* (quoting *Pearson*, 247 F.3d at 486. "No single factor is dispositive; rather, single employer status under this test 'ultimately depends on all the circumstances of the case.'" *Id.* (quoting *Pearson*, 247 F.3d at 486.) "[T]he application of [these] factors is a 'factual' question rather than a 'legal' one." *Id.* (quoting *Pearson*, 247 F.3d at 496-97).

Although this test was announced outside of the FLSA context, and the Third Circuit has yet to apply this test to the FLSA, "several district courts in

11

this circuit have done so." *Id.* (quoting *Lambert v. Jariwala & Co., LLC*, 18–17295, 2023 WL 1883354, at *10 (D.N.J. Feb 10, 2023)). I will do the same.[4]

In support of her position that defendants collectively operate as a "single integrated enterprise," plaintiff proffers that all defendants: (1) are controlled and managed by Kohli as the "sole managing member of each [C]orporate [D[efendant"; (2) "share[] … employees amongst the [r]estaurants" and "joined together for purposes of obtaining Workers' Compensation insurance"; (3) have uniform wage and hour policies and employee guidelines; and (4) use the same third-party pay roll service. (Opp'n pp. 46–49; Second Am. Compl. ¶¶ 106, 137, 147, 148, 151, 159, 163, 164, 168, 192, 210–212, 219). I find that these facts do not sufficiently establish a "single integrated enterprise."

While plaintiff alleges that each Corporate Defendant can be traced to Kohli (Second Am. Compl. ¶ 162), "shared ownership, by itself, means little." *Huang*, 2022 WL 2052646, at *4 (noting that entities may remain separate and distinct despite being owned by the same individuals). Despite sharing employee guidelines and some other services (Second Am. Compl. ¶ 168), the Corporate Defendants do not have interrelated operations, resources, or, management. *Huang,* 2022 WL 2052646, at *4. For example, plaintiff does not allege that the Corporate Defendants can "pull freely" from each other's resources, like utensils, ingredients, or bank accounts, such that their assets and liabilities are comingled. *See id.* Furthermore, each Friendly's or Tilted Kilt Pub & Eatery have their own staff and management team. Although plaintiff worked at both AARKH Gloucester and AARKH Voorhees and recalls of instances where employees were sent to different restaurant locations if

---

[4] Defendants note that "no New Jersey state court has … permitted a single employer liability theory under the NJ[M]WHL." (Mov. Br. p. 47.) Plaintiff does not appear to argue that this theory applies to her NJMWHL claims. Thus, my analysis of the single employer liability theory will be limited to plaintiff's FLSA claims.

short-staffed (Second Am. Compl. ¶¶ 164, 216), she does not allege that she or the other employees were able to "move freely between the two [locations], working one shift at one … and the next at another." *Huang*, 2022 WL 2052646, at \*4. Her paychecks for having worked at these locations were issued by different Corporate Defendants and thus support defendants' position that the Corporate Defendant operate independently. (Second Am. Compl. ¶ 218). Accordingly, upon considering the totality of the circumstances, I find that despite some minimal, shared activities, defendants "are not 'involved directly' in each other's 'production, distribution, [and] marketing.'" *Huang*, 2022 WL 2052646, at \*4 (alteration in original) (quoting *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997)).

### 2.     **Kohli**[5]

As to individual actors, liability "is appropriate where … 'supervisory authority over the complaining employee'" was exercised, and the individual employer was "responsible in whole or part for the alleged violation." *Xiao v. Sichuan Gourmet LLC*, No. 21–00482, 2022 WL 819096 at \*3 (W.D. Pa. Mar. 18, 2022) (quoting *Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014)). "The test for the status of individuals is functional—simply alleging that individual actors hold a certain position in the corporate organizational chart is insufficient." *Id.* "Instead, the individual must actually "exercise[] control over the [employee's] work situation." *Id.* (alterations in original) (quoting *Haybarger v. Lawrence Cnty. Adult Prob. &*

---

[5] Defendants argue that because plaintiff fails to establish a "joint employment" relationship between AARKH Gloucester and the remaining defendants, particularly Kohli, the claims against Kohli should be dismissed. (Mov. Br. pp. 43–46.) Plaintiff, however, explains that because she "did not plead [d]efendants acted as a joint employer and that is not part of [her] legal theory," she need not establish a joint employer relationship amongst defendants. (Opp'n pp. 38–41.) Although plaintiff failed to address defendants' arguments as to whether Kohli is her employer, I address this issue.

13

*Parole*, 667 F.3d 408, 417 (3d Cir. 2012)). To assess whether an employee-employer relationship exists, courts assess whether the individual employer has: (1) "authority to hire and fire employees"; (2) "authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours"; (3) "day-to-day supervision, including employee discipline"; and (4) "control of employee records, including payroll, insurance, taxes, and the like." *Id.* (quoting *In re Enterprise Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 467 (3d Cir. 2012) (noting that these factors are not exhaustive and should not be "blindly applied")).

Plaintiff alleges that "[i]n his capacity as owner and operator [of the Corporate Defendants], … Kohli exercises sufficient control over the labor policies and practices … to be considered" her employer. (Second Am. Compl. ¶ 158.) Plaintiff alleges that Kohli held numerous meetings with "Tipped Employees" and sent them a letter, in his capacity as "President" to advise of the server rate. (*Id.* ¶¶ 156, 165; ECF No. 16–2 p. 2; Opp'n p. 12.) Plaintiff also points to how Kohli signed the employee handbook and listed his personal address for many of the Corporate Defendants. (Second Am. Compl. ¶ 180; Opp'n p. 12.)

These allegations do not suggest that Kohli had any particular control over plaintiff. At no point does plaintiff sufficiently plead that Kohli was involved with her hiring, firing, or daily activities. *See In re Enterprise*, 683 F.3d at 467. I find that no employee-employer relationship existed between plaintiff and Kohli.

### D. <u>Statute of Limitations</u>

Generally, a two-year statute of limitations applies to FLSA claims. 29 U.S.C. § 255(a). The statute of limitations may be extended to three years if the employer willfully violated the FLSA. *Id.* Under the FLSA, a cause of action accrues "when the employer fails to pay the required compensation for

14

any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21(b). "A willful violation occurs when 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" *Albanese v. Cnty. of Bergen*, 991 F. Supp. 410, 425 (D.N.J. 1997) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "The Third Circuit has held that whether a violation is willful is 'a question of fact,' and, consequently, a court may take the question from the jury only 'if there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party.'" *Hall*, 2023 WL 1927386, at *3 (quoting *Souryavong v. Lackawanna Cnty.*, 872 F.3d 122 (3d Cir. 2017)).

I find that defendants' argument does not satisfy this threshold. Defendants argue that because plaintiff alleges that defendants had attempted to include a tip credit notification, defendants' conduct cannot be considered willful. (Mov. Br. p.58; Second Am. Compl. ¶269.) I, however, find that such conduct raises a question of fact for a jury to determine.

### III. CONCLUSION

For the reasons stated above, the Motion is GRANTED in part and DENIED in part.

                               */s/ Edward S. Kiel*
                               **EDWARD S. KIEL**
                               **UNITED STATES DISTRICT JUDGE**

Dated: January 14, 2025